**Exhibit "B"**

# BUCKS COUNTY RECORDER OF DEEDS
## 55 East Court Street
## Doylestown, Pennsylvania 18901
## (215) 348-6209

**Instrument Number - 2008008426**
**Recorded On 1/23/2008 At 1:44:55 PM**                    * Total Pages - 12
\* **Instrument Type - MORTGAGE - CORPORATIONS**
**Invoice Number - 235301**          User - NMS
\* **Mortgagor - ERB, JAMES J**
\* **Mortgagee - ALLIED MTG GRP INC**
\* **Customer - INTEGRITY ASSURANCE INC / NANCY**
\* **FEES**

| | |
|---|---|
| RECORDING FEES | $61.00 |
| TOTAL PAID | $61.00 |

This is a certification page

# DO NOT DETACH

This page is now part
of this legal document.

**RETURN DOCUMENT TO:**
**INTEGRITY ASSURANCE INC**

I hereby CERTIFY that this document is
recorded in the Recorder of Deeds Office
of Bucks County, Pennsylvania.

Edward R. Gudknecht
Recorder of Deeds

\* - Information denoted by an asterisk may change during
the verification process and may not be reflected on this page.

**Book: 5677 Page: 1775**

# RECEIVED

2008 JAN 22 ⊓ 12: 08

## BUCKS COUNTY
## RECORDER OF DEEDS

B.C.B.O.A.
Registry

This Instrument Prepared By:
ALLIED MORTGAGE GROUP,
7 BALA AVE., STE
BALA PA 19004
(610)668-2745

After Recording Return To:
ALLIED MORTGAGE GROUP, INC
7 BALA AVE., STE 108
BALA CYNWYD, PENNSYLVANIA 19004
Loan Number: ████████

Uniform Parcel Identifier Number: ████████

Property Address:
124 TWIN OAK DRIVE
LEVITTOWN, PENNSYLVANIA 19056

Record & Return to:
Lenders Edge
Settlement Services, LLC
1210 Northbrook Drive, Suite 320
Trevose, PA 19053

████████

———————— [Space Above This Line For Recording Data] ————————

# MORTGAGE

FHA CASE NO.
████████

MIN: ████████

        THIS MORTGAGE ("Security Instrument") is given on   JANUARY 14, 2008      .
The mortgagor is   JAMES J ERB AND JERRY F COLEMAN AND JOHN COLEMAN AND
DORIS COLEMAN

                                                                        ("Borrower").
This Security Instrument is given to Mortgage Electronic Registration Systems, Inc. ("MERS") (solely as nominee
for Lender, as hereinafter defined, and Lender's successors and assigns), as mortgagee. MERS is organized and
existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-
2026, tel. ████████
ALLIED MORTGAGE GROUP, INC, A PENNSYLVANIA BANKING CORPORATION            ("Lender")
is organized and existing under the laws of   PENNSYLVANIA                                      ,
and has an address of   7 BALA AVE., STE 108, BALA CYNWYD, PENNSYLVANIA
19004
Borrower owes Lender the principal sum of   TWO HUNDRED THIRTY-TWO THOUSAND NINE
HUNDRED FORTY-TWO AND 00/100              Dollars (U.S. $  232,942.00        ).
This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides
for monthly payments, with the full debt, if not paid earlier, due and payable on  FEBRUARY 1, 2038   .

---

FHA PENNSYLVANIA MORTGAGE - MERS
6/96                                          Page 1 of 10                    DocMagic €Forms 800-649-1362
                                                                             www.docmagic.com

This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS the following described property located in    BUCKS                                  County, Pennsylvania:

SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS EXHIBIT "A".
A.P.N.: ▓▓▓▓▓▓▓▓▓

which has the address of    124 TWIN OAK DRIVE
                                                                    [Street]
              LEVITTOWN                        , Pennsylvania      19056          ("Property Address"):
              [City]                                                [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument; but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing or canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

**UNIFORM COVENANTS.** Borrower and Lender covenant and agree as follows:
1.   **Payment of Principal, Interest and Late Charge.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.
2.   **Monthly Payment of Taxes, Insurance, and Other Charges.** Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under paragraph 4. In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in

FHA PENNSYLVANIA MORTGAGE - MERS
6/96                                          Page 2 of 10                          DocMagic *eFormes* 800-649-1362
                                                                                    www.docmagic.com

Case 5:19-bk-01819-RNO    Doc 17-4    Filed 06/10/19    Entered 06/10/19 17:14:37    Desc
                Exhibit B    Mortgage    Page 4 of 25

which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. §2601 et seq. and implementing regulations, 24 CFR Part 3500, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

3. **Application of Payments.** All payments under paragraphs 1 and 2 shall be applied by Lender as follows:

FIRST, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

SECOND, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

THIRD, to interest due under the Note;

FOURTH, to amortization of the principal of the Note; and

FIFTH, to late charges due under the Note.

4. **Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in paragraph 2, or

Case 5:19-bk-01819-RNO    Doc 17-4    Filed 06/10/19    Entered 06/10/19 17:14:37    Desc
Exhibit B    Mortgage    Page 5 of 25

change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

**5. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless the Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

**6. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

**7. Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2.

Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement at the Note rate, and at the option of Lender shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's

Case 5:19-bk-01819-RNO    Doc 17-4    Filed 06/10/19    Entered 06/10/19 17:14:37    Desc
Exhibit B    Mortgage    Page 6 of 25

opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

8. **Fees.** Lender may collect fees and charges authorized by the Secretary.

9. **Grounds for Acceleration of Debt.**

(a) **Default.** Lender may, except as limited by regulations issued by the Secretary in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

(i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

(ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

(b) **Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including section 341(d) of the Garn-St. Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

(i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

(ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property, but his or her credit has not been approved in accordance with the requirements of the Secretary.

(c) **No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

(d) **Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

(e) **Mortgage Not Insured.** Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within  60 DAYS from the date hereof, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to  60 DAYS   from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

10. **Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current

Case 5:19-bk-01819-RNO   Doc 17-4   Filed 06/10/19   Entered 06/10/19 17:14:37   Desc
Exhibit B   Mortgage   Page 7 of 25

foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

**11. Borrower Not Released; Forbearance by Lender Not a Waiver.** Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-Signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**14. Governing Law; Severability.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**15. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**16. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

Case 5:19-bk-01819-RNO    Doc 17-4    Filed 06/10/19    Entered 06/10/19 17:14:37    Desc
Exhibit B    Mortgage    Page 8 of 25

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

17. **Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

18. **Foreclosure Procedure.** If Lender requires immediate payment in full under paragraph 9, Lender may foreclose by judicial proceedings and/or invoke any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided or referred to in this paragraph 18, including, but not limited to, attorneys' fees and costs of title evidence to the extent permitted by applicable law.

If the Lender's interest in this Security Instrument is held by the Secretary, and the Secretary requires immediate payment in full under paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 et seq.) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this paragraph 18 or applicable law.

19. **Release.** Upon payment of all sums secured by this Security Instrument, this Security Instrument and the estate conveyed shall terminate and become void. After such occurrence, Lender shall discharge and satisfy this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under applicable law.

20. **Waivers.** Borrower, to the extent permitted by applicable law, waives and releases any error or defects in proceedings to enforce this Security Instrument, and hereby waives the benefit of any present or future laws providing for stay of execution, extension of time, exemption from attachment, levy and sale, and homestead exemption.

21. **Reinstatement Period.** Borrower's time to reinstate provided in paragraph 10 shall extend to one hour prior to the commencement of bidding at a sheriff's sale or other sale pursuant to this Security Instrument.

22. **Purchase Money Mortgage.** If any of the debt secured by this Security Instrument is lent to Borrower to acquire title to the Property, this Security Instrument shall be a purchase money mortgage.

23. **Interest Rate After Judgment.** Borrower agrees that the interest rate payable after a judgment is entered on the Note or in an action of mortgage foreclosure shall be the rate payable from time to time under the Note.

Case 5:19-bk-01819-RNO    Doc 17-4    Filed 06/10/19    Entered 06/10/19 17:14:37    Desc
Exhibit B    Mortgage    Page 9 of 25

**24. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument.

[Check applicable box(es)].

☐ Condominium Rider      ☐ Graduated Payment Rider      ☐ Growing Equity Rider

☐ Planned Unit Development Rider      ☐ Adjustable Rate Rider      ☐ Rehabilitation Loan Rider

☐ Non-Owner Occupancy Rider      ☐ Other [Specify]

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in pages 1 through 10 of this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

This is a contract under seal and may be enforced under 42 Pa. C.S. Section 5529(b).

_____ (Seal)      _____ (Seal)
JAMES J ERB              -Borrower      JERRY F COLEMAN      -Borrower

_____ (Seal)      _____ (Seal)
JOHN COLEMAN         -Borrower      DORIS COLEMAN      -Borrower

_____ (Seal)      _____ (Seal)
                   -Borrower                    -Borrower

Witness:             Witness:

_____      _____

FHA PENNSYLVANIA MORTGAGE - MERS
6/96                Page 8 of 10             DocMagic eForms 800-649-1362
                                                        www.docmagic.com

COMMONWEALTH OF PENNSYLVANIA,          County ss: _Bucks_

On this, the _14th_ day of _January, 2008_, before me,
_Barbara Trainor_
the undersigned officer, personally appeared JAMES J ERB AND JERRY F COLEMAN AND
JOHN COLEMAN AND DORIS COLEMAN

known to me (or satisfactorily proven) to be the person _s_ whose name _s are_ subscribed to the
within instrument and acknowledged that _they_ executed the same for the purpose herein contained.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

_Barbara Trainor_
_____

_____
                                        Title of Officer

My Commission expires:

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
BARBARA TRAINOR, Notary Public
Bensalem Twp., Bucks County
My Commission Expires May 12, 2011

FHA PENNSYLVANIA MORTGAGE - MERS
6/96                          Page 9 of 10          DocMagic eForms 800-649-1362
                                                    www.docmagic.com

Case 5:19-bk-01819-RNO    Doc 17-4    Filed 06/10/19    Entered 06/10/19 17:14:37    Desc
Exhibit B    Mortgage    Page 11 of 25

**Certificate of Residence of Mortgagee**

The undersigned hereby certifies that: (i) he/she is the Mortgagee or the duly authorized attorney or agent of the Mortgagee named in the within instrument; and (ii) Mortgagee's precise residence is:
7 BALA AVE., STE 108
BALA CYNWYD, PENNSYLVANIA 19004

Witness my hand this 14th day of January, 2000

_____
Signature of Mortgagee or Mortgagee's Duly Authorized Attorney or Agent

_____
Type or Print Name of Mortgagee or Mortgagee's Duly Authorized Attorney or Agent

Loan Number █████████

Date: JANUARY 14, 2008

Property Address: 124 TWIN OAK DRIVE, LEVITTOWN, PENNSYLVANIA 19056

## EXHIBIT "A"

## LEGAL DESCRIPTION

ALL THAT CERTAIN lot, piece or parcel of land, with the buildings and improvements thereon, situate, lying and being at Levittown, in the Township of Middletown, County of Bucks, Commonwealth of Pennsylvania, shown and designated as Lot No. 9702 J on Subdivision Map of "Twin Oak", Levittown, Section 62, filed in the Office of the Recorder of Deeds of Bucks County, Pennsylvania, on October 5, 1955 in Plan Book 10 page 28 and known as 124 Twin Oak Drive, Levittown, Pennsylvania.

DocMagic EForms 800-649-1362
www.docmagic.com

**Home Affordable Modification Agreement**
**(Servicer Copy)**

**Bank of America** 〰 **Home Loans**

Investor Loan # ████████ _____

**After Recording Return To:**
.Bank of America, N.A.
C/O Home Retention Services, Inc.
9700 Bissonnet Street
Suite 1500
Houston, TX 77036

(Page 1 of 12)

This document was prepared by
Bank of America, N.A.
Modifications Department
9700 Bissonnet Street
Suite 1500
Houston, TX 77036
877.422.1761

_____[Space Above This Line For Recording Data]_____

# HOME AFFORDABLE MODIFICATION AGREEMENT

Borrower ("I"):[1] JAMES J ERB AND JERRY F COLEMAN

Original Lender/Beneficiary Lender or Servicer ("Lender"): Bank of America, N.A.
Date of first lien mortgage, deed of trust, or security deed ("Mortgage") and Note ("Note"):
January 14, 2008
Loan Number: ███████████
Property Address: (See Exhibit A for Legal Description if applicable) "Property":
124 Twin Oak Drive, Levittown, PA 19056
See Exhibit B for assignments of record if applicable.

If my representations and covenants in Section 1 continue to be true in all material respects, then this Home Affordable Modification Agreement ("Agreement") will, as set forth in Section 3, amend and supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage. The Mortgage and Note together, as they may previously have been amended, are referred to as the "Loan Documents." Capitalized terms used in this Agreement and not defined have the meaning given to them in Loan Documents.

I understand that after I sign and return two copies of this Agreement to the Lender, the Lender will send me a signed copy of this Agreement. This Agreement will not take effect unless the preconditions set forth in Section 2 have been satisfied.

1. **My Representations and Covenants.** I certify, represent to Lender, covenant and agree:

   A. I am experiencing a financial hardship, and as a result, (i) I am in default under the Loan Documents or my default is imminent, and (ii) I do not have sufficient income or access to sufficient liquid assets to make the monthly mortgage payments now or in the near future;

   B. Either I have not been displaced and one of the borrowers signing this Agreement lives in the Property as a principal residence or lived in the Property as a principal residence

---

[1] If more than one Borrower or Mortgagor is executing this document, each is referred to as "I". For purposes of this document words signifying the singular (such as "I") shall include the plural (such as "we") and vice versa where appropriate.

immediately prior to being displaced; or I am currently displaced and (i) I intend to re-occupy the Property as a principal residence in the future, (ii) I do not own any single-family real estate other than the subject Property, and (iii) the Property has not been condemned.

C.     There has been no impermissible change in the ownership of the Property since I signed the Loan Documents. A permissible change would be any transfer that the lender is required by law to allow, such as a transfer to add or remove a family member, spouse or domestic partner of the undersigned in the event of a death, divorce or marriage;

D.     I have provided documentation for **all** income that I receive (and I understand that I am not required to disclose child support or alimony unless I chose to rely on such income when requesting to qualify for the Home Affordable Modification Program ("Program"));

E.     Under penalty of perjury, all documents and information I have provided to Lender in connection with this Agreement, including the documents and information regarding my eligibility for the Program, are true and correct;

F.     If Lender requires me to obtain credit counseling in connection with the Program, I will do so; and

G.     I have made or will make all payments required under a trial period plan.

H.     I was discharged in a Chapter 7 Bankruptcy proceeding subsequent to the execution of the Loan Documents. Based on this representation, Lender agrees that I will not have personal liability on the debt pursuant to this Agreement.

2.     **Acknowledgements and Preconditions to Modification.** I understand and acknowledge that:

A.     If prior to the Modification Effective Date as set forth in Section 3 the Lender determines that any of my representations in Section 1 are no longer true and correct or any covenant in Section 1 has not been performed, the Loan Documents will not be modified and this Agreement will terminate. In that event, the Lender will have all of the rights and remedies provided by the Loan Documents; and

B.     I understand that the Loan Documents will not be modified unless and until (i) the Lender accepts this Agreement by signing and returning a copy of it to me, and (ii) the Modification Effective Date (as defined in Section 3) has occurred. I further understand and agree that the Lender will not be obligated or bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under this Agreement.

3.     **The Modification.** If my representations and covenants in Section 1 continue to be true in all material respects and all preconditions to the modification set forth in Section 2 have been met, the Loan Documents will automatically become modified on October 01, 2015 (the "Modification Effective Date") and all unpaid late charges that remain unpaid will be waived. I understand that if I have failed to make any payments as a precondition to this modification under a trial period plan, this modification will not take effect. The first modified payment will be due on October 01,

2015.

A.   The Maturity Date will be: September 01, 2055.

B.   The modified principal balance of my Note will include all amounts and arrearages that will be past due as of the Modification Effective Date (including unpaid and deferred interest, fees, escrow advances and other costs, but excluding unpaid late charges, collectively, "Unpaid Amounts") less any amounts paid to the Lender but not previously credited to my Loan. Any fees or charges incurred in connection with the servicing of your loan which were not invoiced before we calculated the Unpaid Amounts will appear on your monthly statement under "Fees and Charges." These amounts may be paid when billed or at any time afterward. They will not accrue interest or late fees.  If they remain unpaid, they must be satisfied at the earlier of: (i) the date you sell or transfer an interest in the Property, (ii) the date you pay the entire New Principal Balance, or (iii) the Maturity Date.

C.   The new principal balance of my Note will be $249,702.30 (the "New Principal Balance"). I understand that by agreeing to add the Unpaid Amounts to the outstanding principal balance, the added Unpaid Amounts accrue interest based on the interest rate in effect under this Agreement. I also understand that this means interest will now accrue on the unpaid interest that is added to the outstanding principal balance, which would not happen without this Agreement.

D.   Interest at the rate of 3.375% will begin to accrue on the New Principal Balance as of September 01, 2015 and the first new monthly payment on the New Principal Balance will be due on October 01, 2015. My payment schedule for the modified Loan is as follows:

| Years | Interest Rate | Interest Rate Change Date | Monthly Principal and Interest Payment Amount | Estimated Monthly Escrow Payment Amount* | Total Monthly Payment* | Payment Begins On | Number of Monthly Payments |
|---|---|---|---|---|---|---|---|
| Years 1-40 | 3.375% | September 01, 2015 | $948.69 | $676.17 May adjust periodically | $1,624.86 May adjust periodically | October 01, 2015 | 480 |

    \* The escrow payments may be adjusted periodically in accordance with applicable law and therefore my total monthly payment may change accordingly.

The above terms in this Section 3.D. shall supersede any provisions to the contrary in the Loan Documents, including but not limited to, provisions for an adjustable, step or simple interest rate.

I understand that, if I have a pay option adjustable rate mortgage loan, upon modification, the minimum monthly payment option, the interest-only or any other payment options will no longer be offered and that the monthly payments described in the above payment schedule for my modified Loan will be the minimum payment that will be due each month for the remaining term of the Loan. My modified Loan will not have a negative amortization feature that would allow me to pay less than the interest due resulting in any unpaid interest being added to the outstanding principal balance.

E.    I will be in default if I do not comply with the terms of the Loan Documents, as modified by this Agreement.

F.    If a default rate of interest is permitted under the Loan Documents, then in the event of default under the Loan Documents, as amended, the interest that will be due will be the rate set forth in Section 3D.

4.    **Additional Agreements.** I agree to the following:

A.    That all persons who signed the Loan Documents or their authorized representative(s) have signed this Agreement, unless (i) a borrower or co-borrower is deceased; (ii) the borrower and co-borrower are divorced and the property has been transferred to one spouse in the divorce decree, the spouse who no longer has an interest in the property need not sign this Agreement (although the non-signing spouse may continue to be held liable for the obligation under the Loan Documents); or (iii) the Lender has waived this requirement in writing.

B.    That this Agreement shall supersede the terms of any modification, forbearance, trial period plan or other workout plan that I previously entered into with Lender.

C. To comply, except to the extent that they are modified by this Agreement, with all covenants, agreements, and requirements of Loan Documents including my agreement to make all payments of taxes, insurance premiums, assessments, Escrow Items, impounds, and all other payments, the amount of which may change periodically over the term of my Loan.

D. Funds for Escrow Items. I will pay to Lender on the day payments are due under the Loan Documents as amended by this Agreement, until the Loan is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Mortgage as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under the Loan Documents; (d) mortgage insurance premiums, if any, or any sums payable to Lender in lieu of the payment of mortgage insurance premiums in accordance with the Loan Documents; and (e) any community association dues, fees, and assessments that Lender requires to be escrowed. These items are called "Escrow Items." I shall promptly furnish to Lender all notices of amounts to be paid under this Section 4.D. I shall pay Lender the Funds for Escrow Items unless Lender waives my obligation to pay the Funds for any or all Escrow Items. Lender may waive my obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, I shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. My obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in the Loan Documents, as the phrase "covenant and agreement" is used in the Loan Documents. If I am obligated to pay Escrow Items directly, pursuant to a waiver, and I fail to pay the amount due for an Escrow Item, Lender may exercise its rights under the Loan Documents and this Agreement and pay such amount and I shall then be obligated to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with the Loan Documents, and, upon such revocation, I shall pay to Lender all Funds, and in such amounts, that are then required under this Section 4.D. Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under the Real Estate Settlement Procedures Act ("RESPA"), and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge me for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays me interest on the Funds and applicable law permits Lender to make such a charge. Unless an agreement is made in writing or

(Page 6 of 12)

applicable law requires interest to be paid on the Funds, Lender shall not be required to pay me any interest or earnings on the Funds. Lender and I can agree in writing, however, that interest shall be paid on the Funds. Lender shall provide me, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to me for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify me as required by RESPA, and I shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify me as required by RESPA, and I shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by the Loan Documents, Lender shall promptly refund to me any Funds held by Lender.

E.    That the Loan Documents as modified by this Agreement are duly valid, binding agreements, enforceable in accordance with their terms and are hereby reaffirmed.

F.    That all terms and provisions of the Loan Documents, except as expressly modified by this Agreement, remain in full force and effect; nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents; and that except as otherwise specifically provided in, and as expressly modified by, this Agreement, the Lender and I will be bound by, and will comply with, all of the terms and conditions of the Loan Documents.

G.    That, as of the Modification Effective Date, notwithstanding any other provision of the Loan Documents, if all or any part of the Property or any interest in it is sold or transferred without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by the Mortgage. Lender shall not exercise this option if state or federal law, rules or regulations prohibit the exercise of such option as of the date of such sale or transfer. If Lender exercises this option, Lender shall give me notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which I must pay all sums secured by the Mortgage. If I fail to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Mortgage without further notice or demand on me.

H.    That, as of the Modification Effective Date, I understand that the Lender will only allow the transfer and assumption of the Loan, including this Agreement, to a transferee of my property as permitted under the Garn St. Germain Act, 12 U.S.C. Section 1701j-3. A buyer or transferee of the Property will not be permitted, under any other circumstance, to assume the Loan. Except as noted herein, this Agreement may not be assigned to, or assumed by, a buyer or transferee of the Property.

I.    That, as of the Modification Effective Date, if any provision in the Note or in any

addendum or amendment to the Note allowed for the assessment of a penalty for full or partial prepayment of the Note, such provision is null and void.

J.  That, I will cooperate fully with Lender in obtaining any title endorsement(s), or similar title insurance product(s), and/or subordination agreement(s) that are necessary or required by the Lender's procedures to ensure that the modified mortgage Loan is in first lien position and/or is fully enforceable upon modification and that if, under any circumstance and not withstanding anything else to the contrary in this Agreement, the Lender does not receive such title endorsement(s), title insurance product(s) and/or subordination agreement(s), then the terms of this Agreement will not become effective on the Modification Effective Date and the Agreement will be null and void. I also agree to allow Lender to attach an Exhibit A to this loan modification which will include a Legal Description, recording information of the original security instrument, and any other relevant information required by a County Clerk's Office to allow for recording if and when recording becomes necessary for Lender.

K.  That I will execute such other documents as may be reasonably necessary to either (i) consummate the terms and conditions of this Agreement; or (ii) correct the terms and conditions of this Agreement if an error is detected after execution of this Agreement. I understand that either a corrected Agreement or a letter agreement containing the correction will be provided to me for my signature. At Lender's option, this Agreement will be void and of no legal effect upon notice of such error. If I elect not to sign any such corrective documentation, the terms of the original Loan Documents shall continue in full force and effect, such terms will not be modified by this Agreement, and I will not be eligible for a modification under the Home Affordable Modification Program.

L.  That Lender will collect and record personal information, including, but not limited to, my name, address, telephone number, social security number, credit score, income, payment history, government monitoring information, and information about account balances and activity. In addition, I understand and consent to the disclosure of my personal information and the terms of the trial period plan and this Agreement by Lender to (i) the U.S. Department of the Treasury, (ii) Fannie Mae and Freddie Mac in connection with their responsibilities under the Home Affordability and Stability Plan; (iii) any investor, insurer, guarantor or servicer that owns, insures, guarantees or services my first lien or subordinate lien (if applicable) mortgage loan(s); (iv) companies that perform support services for the Home Affordable Modification Program and the Second Lien Modification Program; and (v) any HUD certified housing counselor.

M.  That if any document related to the Loan Documents and/or this Agreement is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the Loan as modified, or is otherwise missing, I will comply with the Lender's request to execute, acknowledge, initial and deliver to the Lender any documentation the Lender deems necessary. If the Note is replaced, the Lender hereby indemnifies me against any loss associated with a demand on the Note. All documents the Lender requests of me under this Section 4.N. shall be referred to as "Documents." I agree to deliver the Documents within ten (10) days after I receive the Lender's written request for such

replacement.

N.     If my Loan Documents govern a home equity loan or line of credit, then I agree that as of the Modification Effective Date, I am terminating my right to borrow new funds under my home equity loan or line of credit. This means that I cannot obtain additional advances, and must make payments according to this Agreement. (Lender may have previously terminated or suspended my right to obtain additional advances under my home equity loan or line of credit, and if so, I confirm and acknowledge that no additional advances may be obtained.)

O.     BORROWERS PROTECTION PLAN® If I have a Loan with Borrowers Protection Plan® ("BPP") under my Loan Documents, then I understand and agree that, unless I notify Lender of my request to cancel BPP or my BPP has already been cancelled or terminated in accordance with its terms, my BPP will remain on my Loan until September 30, 2015, as modified in accordance with this Agreement, and will continue to be governed by the terms of my Borrowers Protection Plan® Addendum, which is the contract containing the terms and conditions of BPP that I received at closing of my original Loan. Unless terminated earlier pursuant to the terms of the BPP Addendum, I understand and agree that my BPP will terminate effective September 30, 2015.

I understand that I may cancel BPP at any time prior to September 30, 2015 by calling 866.317.5116. I further understand that BPP on my Loan may have already been cancelled or terminated by its terms, such as if any monthly fee for BPP has remained unpaid 90 days after its due date. I understand that if I have received or receive a cancellation notice for BPP due to unpaid BPP fees for one or more of the months in any trial period required as a condition to this Agreement, **I must request reinstatement of BPP within thirty (30) days following the Modification Effective Date by calling 866.317.5116 if I wish to have BPP on my modified loan. If BPP is reinstated on my loan, BPP will continue to be governed by the terms of my** Borrowers Protection Plan® Addendum that I received at the closing of my original mortgage loan and will terminate no later than September 30, 2015.

For purposes of my modified Loan, the "Monthly Payment" under the Borrowers Protection Plan® Addendum will be the monthly payment of principal and/or interest as modified under this Agreement. With the exception of BPP benefits based on the outstanding balance of my Loan (if any), benefits under the BPP on my modified Loan will be calculated based on this new Monthly Payment amount, subject to the terms of the Borrowers Protection Plan® Addendum.

If I have experienced a qualifying event that is eligible for benefits under BPP, I should contact Bank of America, N.A. immediately by calling 866.317.5116.

P.     OPTIONAL PRODUCTS PURCHASED AFTER CLOSING I understand and agree that any optional product(s) I may have purchased after the closing of my Loan, the cost for which I agreed to have added to my Total Monthly Payment: (a) will remain in force so long as I add the amount due and owing to my Total Monthly Payment each month; and (b) will continue to be governed by the terms of the documents the provider of the optional product delivered to me ("Governing Documents"), unless (i) I notify the provider of the optional product of my request to cancel; or (ii) I fail to pay any and all amounts payable when due, at which time the optional product may terminate as provided under the terms of the Governing Documents. I understand that if I have questions regarding any optional product(s) I may have purchased, I should contact Bank of America, N.A. by calling 800.641.5298.

In Witness Whereof, the Lender and I have executed this Agreement.
     (Signatures must be signed exactly as printed, original signature required, no photocopies accepted)

SIGN HERE _____     9/21/15
         Borrower James J Erb                        Date

SIGN HERE _____     9-21-2015
         Borrower Jerry F Coleman                    Date

**DO NOT WRITE BELOW THIS LINE**

THIS SECTION IS FOR INTERNAL USE ONLY

**Bank of America, N.A., for itself or as successor by merger to BAC Home Loans Servicing, LP**

By: Stewart Lender Services, Inc., its attorney in fact

By: _Candace Randolph_

_Candace Randolph, AVP_ , Stewart Lender Services, Inc.

_9-29-15_
Date